Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 13 C 3694 | **DATE** | 6/3/2013 |
| **CASE TITLE** | Malibu Media, LLC vs. John Doe | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this order, the Court denies without prejudice plaintiff's motion for leave to serve a third party subpoena prior to a Rule 26(f) conference [5].

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

     Plaintiff asks the Court for leave to issue a subpoena to defendant Doe's internet service provider ("ISP") before the Federal Rule of Civil Procedure 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."). Rule 26 does not set forth a standard for granting such motions, but courts in this circuit generally require a showing of good cause. *See, e.g., Hard Drive Prods., Inc. v. Doe*, 283 F.R.D. 409, 410 (N.D. Ill. 2012); *AF Holdings, LLC v. Doe*, No. 12-1398, 2012 WL 5928532, at *1 (C.D. Ill. Nov. 26, 2012). Good cause exists when "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Hard Drive Prods., Inc.*, 283 F.R.D. at 410 (quotation omitted). "In deciding a motion for expedited discovery, the Court evaluates the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id.* (quotation omitted).

     As many courts and commentators have noted, a showing of good cause is particularly important when, as in this case, plaintiff sues an internet user for illegally downloading copyrighted pornography for several reasons. First, the increasing ubiquity of wireless networks undermines the copyright holder's assumption that the ISP subscriber is the copyright infringer. *See In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11-2995 (DRH) (GRB), 12-1147 (JS) (GRB), 12-1150 (LDW) (GRB), 12-1154 (ADS) (GRB), 2012 WL 1570765, at *3-5 (E.D.N.Y. May 1, 2012) (stating that, because of the increasing use of wireless routers, by which one IP address can support multiple devices, the downloader could be the subscriber's family member, friend, visitor, neighbor or even a passerby); *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. Jan. 30, 2012) (noting the risk that "many of the names and addresses produced [by the ISP] . . . will not in fact be those of the [infringers]," given the estimate by "[p]laintiff's counsel . . . that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material") (emphasis omitted); *VPR Int'l v. Does 1-1017*, No. 11-2068, 2011 WL 8179128, at *2 (C.D. Ill. Apr. 29, 2011) ("The infringer might be

the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."). Second, the embarrassment of being publicly accused of downloading pornography, illegally no less, is a strong incentive for even those wrongly accused to settle such a suit. *See Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618, at *7 (N.D. Ill. Mar. 7, 2013) ("[T]his Court is not the first to recognize that claims against mass defendants and motions to discover defendants' identities may be used to shame defendants into settlement agreements where they may otherwise have a meritorious defense."); *Hard Drive Prods. v. Does 1-48*, No. 11 C 9062, 2012 WL 2196038, at *5 (N.D. Ill. June 14, 2012) (noting that adult film producers "sue[] a mass of anonymous defendants, gain[] leave to take expedited discovery to obtain the identities of the IP subscribers, then settle[] with numerous defendants who are motivated to avoid being publicly connected to pornographic movies, although the plaintiff actually harbors little interest in going through with [the] litigati[on]"). Third, the rise of so-called "copyright trolls" – plaintiffs who file multitudes of copyright suits solely to extort quick settlements – requires courts to ensure that the litigation process and their scarce resources are not being abused. *See In re BitTorrent*, 2012 WL 1570765, at *10 (stating that the litigation tools provided by federal courts "should not . . . be used as a bludgeon" by "filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement") (quotation omitted); *K-Beech, Inc. v. John Does 1-85*, No. 3:11cv469-JAG, 2011 WL 10746535, at *2-3 (E.D. Va. Oct. 13, 2011) (stating that plaintiffs' pattern of conduct – getting Doe defendants' names from an ISP, repeatedly demanding settlement payments and voluntarily dismissing any defendant who actively defends – suggests that they "have no interest in actually litigating the cases, but . . . have used the Court and its subpoena powers . . . to shake down the John Does"); *see generally*, Sean D. Karunaratne, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits*, 111 Mich. L. Rev. 283 (Nov. 2012); James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent. L. Rev. 79 (Winter 2012).

Plaintiff contends that there is good cause for issuing an early subpoena to Doe's ISP because that is the only way to identify Doe. Plaintiff bases that assertion on the Declaration of Tobias Fieser, an employee of IPP, Limited, a "provid[er] [of] forensic investigation services to copyright owners." (*See* Mot. Leave Serve 3d Party Subpoena Prior Rule 26(f) Conference, Ex. 1, Fieser Decl. ¶¶ 4-5.) Fieser states that: (1) only the ISP has "records [that] . . . . associat[e] an IP address to a real person"; (2) an ISP never simultaneously assigns more than one subscriber to a single IP address; and (3) "ISPs only retain IP address assignment information for a limited amount of time." (*See id.* ¶¶ 8-10.) Fieser does not, however, describe his education or experience or otherwise explain how he has knowledge of the practices and record-keeping policies of every ISP. Nor does he or anyone else explain how often, in plaintiff's experience, a subscriber identified by an ISP is not, in fact, the alleged infringer. Absent such information, plaintiff has not shown good cause for early discovery.